**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Merrill J Badger and Lane M Badger, a married couple,<br><br>Plaintiffs,<br><br>vs.<br><br>Mortgage Electronic Registration Systems, Inc.; ReconTrust Company, NA; Bank of New York Mellon FKA The Bank of New York, as trustee, for the Certificateholders, CWABS, Inc., Asset-Backed Certificates Series 2007-8; BAC Home Loans Servicing, LP; Ann Gray, Notary and resident of Yavapai County; and Does 1-100,<br><br>Defendants. | No. CV-11-08094-PCT-NVW<br><br>**ORDER** |

Before the Court is a motion to dismiss (Doc. 6) filed by all Defendants save for Ann Gray, who has not yet been served. The moving Defendants filed their motion on June 23, 2011. This District's local rules required Plaintiffs to respond by July 11, 2011. LRCiv 7.2(c); Fed. R. Civ. P. 6(d). Plaintiffs filed no response. On this basis alone, the Court could grant Defendants' motion. LRCiv 7.2(i). However, as explained below, the Court will grant Defendants' motion on its merits.

**I. BACKGROUND**

In May 2007, Plaintiffs took out a $378,000 loan to buy a home in Sedona. Non-party Home Capital Funding loaned this money through the typical deed of trust/promissory note arrangement.

Plaintiffs claim that Home Capital intentionally inflated Plaintiffs' income to approve Plaintiffs for an ultimately unaffordable loan. Plaintiffs also claim that, sometime after their loan closed, the original (*i.e.*, paper) promissory note was scanned and then destroyed to permit easy transfers and securitization. Plaintiffs' loan was then securitized, facilitated by Defendant Mortgage Electronic Registration Systems ("MERS").

At some unspecified date, the Badgers fell behind on their house payments. Then, on September 24, 2010: (1) Home Capital assigned its interest in the deed of trust and promissory note to Defendant Bank of New York Mellon ("New York Mellon"); (2) New York Mellon, through the loan servicer, Defendant BAC Home Loans Servicing ("BAC"), appointed Defendant ReconTrust as successor trustee; and (3) ReconTrust filed a notice of trustee's sale.

ReconTrust cancelled the trustee's sale on October 18, 2010, but noticed a new trustee's sale on December 29, 2010. The Badgers' complaint contains nothing about what has happened since then, but the Badgers filed suit in Yavapai County District Court on May 6, 2011. The Badgers asserted five causes of action: (1) breach of contract against BAC, ReconTrust, New York Mellon, and non-party Home Capital, apparently on a loosely asserted theory that the Badgers' loan documents do not authorize anyone to assign the note, securitize the debt, and so forth; (2) fraud against non-party Home Capital, based on the theory that Home Capital inflated the Badgers' income to qualify them for a loan they ultimately could not afford;[1] (3) statutory consumer fraud against

---

[1] This cause of action also contains out-of-context allegations that Defendant Ann Gray notarized some unspecified statement known to be false, failed to keep a proper notary journal, and failed to discharge her duties appropriately, in violation of Arizona

BAC, New York Mellon, ReconTrust, and non-party Home Capital; (4) accounting against BAC, New York Mellon, and MERS, asking for all documentation regarding all aspects of the Badgers' loan; and (5) quiet title against BAC and New York Mellon. All of the Badgers' claims appear linked to the theory that the destruction of the original promissory note made it impossible to transfer or enforce it. Therefore, the Badgers conclude, no one has a right to foreclose on them, even if they have missed payments, because no one has a legitimate right to receive those payments.

Defendants BAC, New York Mellon, and ReconTrust were served between May 10 and May 17, 2011. Defendants MERS and Ann Gray have not been served. Defendants MERS, BAC, New York Mellon, and ReconTrust — from this point on, "Defendants" — removed to this Court on June 16, 2011.[2] Defendants claim jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 (given that the Badgers borrowed $378,000) and no Defendant is an Arizona resident — save for Ann Gray, whom Defendants claim was fraudulently joined.

## II. ANALYSIS

### A. Diversity Jurisdiction

#### 1. Legal Standard

If a case filed in state court could have been filed in federal court, the defendant(s) in that case can sometimes remove it to federal court. 28 U.S.C. § 1441(b). "Could have been filed in federal court" is the most important prerequisite for removal, meaning that a federal court has original jurisdiction over the dispute. Original federal jurisdiction most commonly arises when the complaint raises an issue of federal law. 28 U.S.C. § 1331. However, if a lawsuit raises no issues of federal law (such as this one), district courts still

---

statutes relating to notaries.

[2] At least one Circuit has held that a not-yet-served party — such as MERS, in this case — can nonetheless remove once it receives some sort of notice of the case. *See Delgado v. Shell Oil Co.*, 231 F.3d 165, 177 (5th Cir. 2000).

have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000 — so-called "diversity jurisdiction." 28 U.S.C. § 1332(a)(1).

State court cases that could have been filed in federal court as diversity jurisdiction cases can be removed to federal court under the following conditions. First, no defendant can be a resident of the forum state. 28 U.S.C. § 1441(b). Second, a defendant must file a notice of removal within thirty days of receiving the plaintiff's complaint, and in any event, no later than one year after the action begins. *Id*. § 1446(b). Third, when a case involves multiple defendants, all defendants must consent to removal. *Proctor v. Vishay Intertech. Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009). However, "the filing of a notice of removal [by one defendant] can be effective [as to all defendants] without individual consent documents on behalf of each defendant. One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient." *Id*.

The removing party bears the burden of establishing federal subject matter jurisdiction. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988). There is a strong presumption against removal jurisdiction. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). If at any time before final judgment it appears that the district court lacks jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c).

### 2. Fraudulent Joinder of Ann Gray

Ann Gray, allegedly an Arizona resident, would normally prevent Defendants from establishing diversity jurisdiction. However,

> one exception to the requirement of complete diversity is where a non-diverse defendant has been "fraudulently joined."
>
> Fraudulent joinder . . . is a term of art. Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against

> a resident defendant, and the failure is obvious according to the settled rules of the state.

*Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (citations and internal quotation marks omitted). A district court can find fraudulent joinder "[o]n the basis of the complaint alone." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The question in this case, then, is whether Ann Gray has been fraudulently joined.

In this case, the complaint alone demonstrates that the Badgers have failed to state a cause of action against Ann Gray. First, the Badgers do not name Gray as the target of any cause of action. Second, the only factual accusations against Gray (buried in the fraud cause of action) are that she (1) knowingly notarized "a statement know[n] to be false," (2) "failed to keep a journal in accordance with [a notary statute]," and (3) "failed to discharge fully and faithfully her duties as a notary." (Doc. 1-1 at 18–19, ¶¶ 70–72.) These accusations amount to nothing. The Badgers do not identify the statement known to be false, nor do they provide any details to substantiate any other accusation. And the notary statutes which Gray purportedly violated have never been held to create a private cause of action for those aggrieved by the notary's actions. Instead, the statute directs such persons to complain to the secretary of state, who refers the complaint to the attorney general for investigation. A.R.S. § 41-331(A).

Given all this, it is "obvious according to the settled rules of the state" that "the plaintiff fails to state a cause of action against" Ann Gray. *Morris*, 236 F.3d at 1067. Accordingly, Gray will be dismissed as a party and need not be considered for purposes of diversity jurisdiction because she was fraudulently joined. Absent Gray, diversity jurisdiction is proper, and Defendants properly removed.

### B. Defendants' Motion to Dismiss

#### 1. Legal Standard

##### a. Rule 8(a)

To state a claim for relief under Fed. R. Civ. P. 8(a), a plaintiff must make "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This "short and plain statement" must also be "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is plausible if it contains "[f]actual allegations [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and to permit a reasonable inference that the defendant is liable for the conduct alleged, *Iqbal*, 129 S. Ct. at 1949. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

A proper complaint needs no "formulaic recitation of the elements of a cause of action," *see Twombly*, 550 U.S. at 555, but the plaintiff must at least "allege sufficient facts to state the elements of [the relevant] claim," *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008). All of the plaintiff's plausible factual allegations are accepted as true and the pleadings are construed in a light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

##### b. Rule 9(b)

Under Fed. R. Civ. P. 9(b), "a plaintiff [alleging fraud] must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc). The plaintiff can usually satisfy this requirement by alleging the identity of the person who made the misrepresentation; the time, place, content, and manner of the misrepresentation; the persons who heard, read, or otherwise received the misrepresentation; and the injury caused by reliance on the

misrepresentation. 2 James Wm. Moore, *Moore's Federal Practice* § 9.03[1][b] (3d ed. 2010).

Specifically with regard to allegations of identity, "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). However,

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud. . . . [A] plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme.

*Id.* at 764–65 (alterations incorporated; citations and internal quotation marks omitted).

### 2. The Badgers' First Cause of Action: Breach of Contract

The Badgers claim that BAC, ReconTrust, New York Mellon, and non-party Home Capital breached the promissory note and deed of trust. The Badgers admit that their contract was with Home Capital, but that BAC and New York Mellon "have inserted themselves" into those instruments "by claiming to be, in [New York Mellon]'s case, the Beneficiary under the Deed of Trust, and in BAC's case, some kind of agent for an undisclosed true holder of the Note." (Doc. 1-1 at 9, ¶¶ 49–50.)

The Badgers do not clearly explain how the note and trust deed have been breached. To the extent they argue that BAC and New York Mellon acted without authority (because the cannot exercise rights under the now-destroyed promissory note), their argument fails. This "show me the note" theory states no claim, *see Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009), and it is difficult to see how it satisfies the elements of a breach of contract claim in any event.

The Badgers also vaguely accuse BAC of misapplying their house payments. Instead of applying such payments to principal and interest, the Badgers believe BAC has been applying them in "unknown ways" that "protect a revenue stream for investors." (Doc. 1-1 at 15, ¶ 52; *see also id.* ¶ 60.) As alleged, this claim is not plausible on its face.

The Badgers do not explain how they came to believe that BAC has misapplied their payments, nor the contract breached by such alleged misapplication. Accordingly, this cause of action fails.

### 3. The Badgers' Second Cause of Action: Fraud

The Badgers allege their second cause of action against Home Capital, a non-party. A cause of action against a non-party is effectively no cause of action at all. It therefore fails and will be dismissed.

To the extent this cause of action was somehow directed at Defendants, it does not give any defendant fair notice of the alleged wrongdoing, in violation of Rule 8(a), much less the specifics required by Rule 9(b). The Badgers' fraud cause of action will be alternatively dismissed on these grounds.

### 4. The Badgers' Third Cause of Action: Statutory Consumer Fraud

This claim is asserted against BAC, New York Mellon, ReconTrust, and Home Capital. Like the Badgers' common law fraud claim, this cause of action does not give any defendant fair notice of the alleged wrongdoing, in violation of Rules 8(a) and 9(b). This cause of action will accordingly be dismissed.

### 5. The Badgers' Fourth Cause of Action: Accounting

The Badgers ask for an "accounting," which they interpret as a requirement for BAC, New York Mellon, and MERS to turn over all information related to their loan. Actions for an accounting are usually reserved for situations in which one party entrusts property to another in a fiduciary relationship. *Dooley v. O'Brien*, 226 Ariz. 149, ¶ 21, 244 P.3d 586, 591–92 (Ct. App. 2010). Absent a special agreement, a debtor-creditor relationship in Arizona is not a fiduciary relationship. *See McAlister v. Citibank*, 171 Ariz. 207, 212, 829 P.2d 1253, 1258 (Ct. App. 1992) (bank owed no fiduciary duty to borrower); *cf. Stewart v. Phoenix Nat'l Bank*, 49 Ariz. 34, 44, 64 P.2d 101, 106 (1937) (special relationship between debtor and creditor existed only because bank officers and directors had been debtor's financial advisors for 23 years). "There is no statutory

requirement that the [homeowner/borrower] be supplied with a complete accounting," *Kelly v. NationsBanc Mortg. Corp.*, 199 Ariz. 284, 286–87, 17 P.3d 790, 792–93 (Ct. App. 2000), nor is there any Arizona authority otherwise establishing anything like a right to an accounting in these circumstances. Therefore, it is not clear that the Badgers are entitled to an accounting.

However, the Badgers allege that they

> are informed and believe that their Note may have already been paid by a third party either through a government program or through private mortgage or other counter party insurance. As a result, such information is necessary to determine if the security Deed of Trust was a valid lien against the Property and whether or not the pending trustee's sale is valid . . . .

(Doc. 1-1 at 22, ¶ 92.) If some third party has, in fact, already paid off the Badgers' loan, the Badgers would have a valid defense to foreclosure, and such a defense is appropriate to assert in an action (such as this one) intended to halt the foreclosure. Unfortunately, the Badgers' allegation is not "plausible on its face" and therefore fails the requirements of Rule 8(a). In this Court's judicial experience, and according to common sense, *see Iqbal*, 129 S. Ct. at 1950, third parties, governments, and insurers rarely pay off a private borrower's mortgage debt gratuitously. Accordingly, the Badgers' accounting cause of action fails to state a claim.

### 6. The Badgers' Fifth Cause of Action: Quiet Title

This Court has no power to quiet title in these circumstances. If the Badgers want to quiet title in their home, they must pay off the loan they used to buy the home. *Eason v. IndyMac Bank, FSB*, CV09-1423-PHX-JAT, 2010 WL 1962309, at *2 (D. Ariz. May 14, 2010); *Farrell v. West*, 57 Ariz. 490, 491, 114 P.2d 910, 911 (1941). Their Complaint contains no allegation that they are prepared to pay off the loan. The Court will therefore dismiss the quiet title cause of action.

### C. Leave to Amend

Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), the Badgers do not merit leave to amend in this instance. Leave to

amend need not be granted where there exist circumstances "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, the Badgers' refusal to defend against Defendants' motion to dismiss displays a dilatory motive, and is effectively the same as failing to cure deficiencies in a previously dismissed complaint. Accordingly, the Badgers will not receive leave to amend.

IT IS THEREFORE ORDERED that unserved Defendant Ann Gray is DISMISSED as a party, having been fraudulently joined.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (Doc. 6) is GRANTED. Plaintiffs' complaint is DISMISSED with prejudice.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendants against Plaintiffs, and that Plaintiffs take nothing. The Clerk shall terminate this case.

Dated this 27th day of July, 2011.

_____
Neil V. Wake
United States District Judge